# United States Court of Appeals
## For the First Circuit

No. 10-2174

ANDREW ZIMMERMANN, as Class Representative for the
Certified Zimmermann Action Classes, ET AL.,

Plaintiffs, Appellants,

v.

EPSTEIN BECKER AND GREEN, P.C., ET AL.,

Defendants, Appellees.

No. 10-2275

ANDREW ZIMMERMANN, as Class Representative for the
Certified Zimmermann Action Classes, ET AL.,

Plaintiffs, Appellants,

v.

BDO SEIDMAN, LLP, ET AL.,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before
Torruella, Boudin and Dyk,[*]
Circuit Judges.

Joseph S. Tusa with whom Tusa P.C., Stephen G. Hennessy, David
J. Vendler, Morris Polich & Purdy LLP, Garrett M. Smith, Garrett M.

---

[*]Of the Federal Circuit, sitting by designation.

Smith PLLC, Gregory S. Duncan, G. Oliver Koppell, Daniel Schreck and G. Oliver Koppell & Associates were on brief for appellants.

Neil J. Dilloff with whom Dale Cathell, DLA Piper LLP(US), Marjorie Sommer Cooke, Barbara Gruenthal and Cooke Clancy & Gruenthal LLP were on brief for appellee Epstein Becker & Green, P.C.

Maura Barry Grinalds with whom Jonathan J. Lerner, Patrick G. Rideout, Skadden Arps Slate Meagher & Flom LLP and Kurt Wm. Hemr were on brief for appellee Paul M. Kaplan.

Mark E. Goidell with whom Law Office of Mark E. Goidell was on brief for appellees Brian J. Davis, Esq., Brian J. Davis P.C., Spence & Davis, LLP, Douglas D. Viviani, Esq., and Douglas D. Viviani, P.C.

Lisa C. Wood with whom Robert E. Toone, Richard G. Baldwin and Foley Hoag LLP were on brief for appellee BDO Seidman LLP.

Anthony A. Scibelli with whom Hiscock & Barclay, LLP was on brief for appellee Chipetine Neu & Silverman, LLP.

Daniel L. Brown and Sheppard Mullin Richter & Hampton, LLP on brief for appellee Sheppard, Mullin, Richter & Hampton, LLP.

---

September 22, 2011

---

**BOUDIN, Circuit Judge.** This appeal arises out of earlier class action litigation brought by the present plaintiff-appellants, Andrew and Kelly Zimmermann. That earlier litigation, Zimmermann v. Cambridge Credit Counseling Corp., 529 F. Supp. 2d 254 (D. Mass. 2008), aff'd sub nom., Zimmerman v. Puccio, 613 F.3d 60 (1st Cir. 2010) ("Zimmermann I"), was brought against Richard and John Puccio and a collection of companies that the Puccio brothers controlled or managed that were purportedly engaged in credit repair and debt consolidation.[1]

The Zimmermanns alleged that these credit companies were utilized by the Puccios as part of a scheme to defraud debtors in violation of the federal Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679 et seq. (2006), and the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (2011). Zimmermann, 529 F. Supp. 2d at 257. After various proceedings, the district court entered judgment in December 2008 in favor of the class for $259 million, and established a constructive trust over "all fees that consumers paid to the current or former defendant entities."

The district court expressly reserved jurisdiction to address, inter alia, "any issues that may arise from the enforcement of the judgments." On April 15, 2009, the district

---

[1]Some decisions and filings in the initial class action incorrectly spelled plaintiffs' surname as "Zimmerman." Most filings and orders in the current case use the correct spelling "Zimmermann."

-3-

court appointed a receiver to take control of the defendants' property. However, the plaintiffs found that the judgment was "largely uncollectable" against the class action defendants, and so the Zimmermanns sought new targets and brought the actions that give rise to the appeals now before us.

In November 2009, the Zimmermanns filed two complaints whose resolution is the subject of this appeal.[2] One named as defendants auditing firms that had assisted the Puccios and their companies in audits and filing of IRS returns prior to and during the class action litigation. The second was against attorneys and law firms who represented the Zimmermann I defendants in either that litigation or other matters involving the credit repair companies, or both. Both actions were styled as class actions on behalf of the same plaintiff class certified in Zimmermann I.

The Zimmermanns alleged that both groups of defendants were paid by the Puccios and their companies for legal and accounting services with money that was "deriv[ed] from and traceable to the Constructive Trust." Additionally, they claimed that all defendants but one (Sheppard Mullin Richter & Hampton LLP) had violated CROA as "participant[s] in the same conduct that has resulted in entry of summary judgment" in the class action.

---

[2]The Zimmermanns filed a third complaint against former associates and employees of the Puccios. This complaint was dismissed by the district court, Zimmermann v. Salzone, 2010 WL 2720021 (D. Mass. July 8, 2010), but that judgment has not been appealed.

-4-

Both the attorneys and the accountants filed motions to dismiss. Ultimately, the district judge dismissed both actions on the same grounds. Zimmerman v. BDO Seidman, LLP, No. 09-30190, 2010 WL 3928684 (D. Mass. Sept. 30, 2010); Zimmermann v. Epstein Becker & Green, P.C., No. 09-30194, 2010 WL 2724001 (D. Mass. July 8, 2010). The Zimmermanns now appeal from both dismissals, and the two appeals have been consolidated. In affirming the district court, we bypass a separate procedural ground urged by the accountants because it does not affect the outcome.[3]

The district court dismissed both the constructive trust and CROA claims because the Zimmermanns were seeking "class-based relief" but had declined to seek certification of the class as required by Rule 23 of the Federal Rules of Civil Procedure. Zimmermann v. Epstein Becker & Green, P.C., 2010 WL 2724001 at *2-*3. So far as enforcement of the constructive trust was concerned, the court ruled that recovery of property was a matter for the receiver. Id. at *4.

As to the independent CROA claims against attorneys and accountants, the court held that these were new actions and outside the scope of enforcement jurisdiction. And, it said, even if brought by the Zimmermanns as individuals (and independent of

---

[3]The Zimmermanns failed to file objections in response to the magistrate judge's adverse report and recommendation in the accountants' case, Fed. R. Civ. P. 72(b)(2), but the forfeiture objection is debatable and need not be resolved.

-5-

claims on behalf of the class), the CROA claims which merely cross referenced the prior Zimmermann I judgment failed to meet the pleading standard articulated in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Id. at *5.

Our review of the dismissal is de novo. SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010) (en banc). While we "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader," id., the issues in this instance are essentially legal. We consider separately the claims purporting to enforce the constructive trust and the independent claims based on CROA.

Constructive trust. The district court dismissed the Zimmermanns' claim under this heading on several different grounds, but for us, the narrowest and clearest basis for rejecting it is that the constructive trust cannot be read as intended to claw back monies expended, prior to the imposition of the trust, by the Puccios or their companies in the ordinary course of business and in exchange for fair value.

A constructive trust is not a conventional formal trust established with a named trustee, named beneficiary and a specific object. Restatement (Third) of Trusts § 2 (2003). Rather, it is a court-imposed device, essentially remedial in purpose, to achieve equitable restitution "where money or property identified as belonging in good conscience to the plaintiff could clearly be

-6-

traced to particular funds or property in the defendant's possession." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002).

The central objective is to prevent unjust enrichment, Restatement (Third) of Restitution and Unjust Enrichment § 55(1) (2011), commonly if not invariably based on the possessor's improper acquisition of the claimant's property, Foster v. Hurley, 826 N.E.2d 719, 727 (Mass. 2005) ("Under Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched."); accord In re Chew, 496 F.3d 11, 17 & n.8 (1st Cir. 2007).

In Zimmermann I, the Puccios and their companies were found liable for millions of dollars, and it was readily apparent that the "Puccios liberally commingled the finances of the various companies" and used company funds to pay for personal items. 529 F. Supp. 2d at 272. After the verdict, when the Zimmermanns sought the constructive trust, they further suggested that other creditors might seek to reach assets still in defendants' hands.

Against this background, the district court imposed a constructive trust

> over all fees that consumers paid to the
> current or former defendant entities . . . .
> Such trust shall include without limitation
> all monies or benefits in kind, whether

-7-

salary, distributions, or other payments of money, satisfaction of accounts or charges for services or purchases of real or personal property:

    a.   traceable as a payment from any defendant or former defendant to or for the benefit of John Puccio or Richard Puccio;

    b.   traceable as a payment from any defendant or former defendant to or for the benefit of members of the families, friends or associates of John Puccio and/or Richard Puccio; and/or

    c.   traceable as a payment from any defendant or former defendant to or for the benefit of any manager or employee of any defendant or former defendant that is in excess of the fair value of such person's services rendered.

Conceivably, this language might in some circumstances reach transfers that occurred prior to the establishment of the constructive trust and to innocent persons or entities; this might at least be argued as to family members, friends or associates of the Puccios and to managers and employees of the defendants (where they did not provide fair value in exchange). The language of the constructive trust is not as clear cut as it might be, and we do not decide such issues.

But very little suggests that the order was intended to reach payments, made before the constructive trust was even imposed, to lawyers, accountants or the butcher, baker or

-8-

candlestick maker.[4]  It is even less credible that it was intended to reach payments made in exchange for the fair value of such services.  Very serious questions--of retroactivity, fair notice, and equity--would be raised by such a reading.  The most plausible reading of the constructive trust order, considering the context in which it was imposed, is that it was directed at monies derived from fraudulent acts that might yet be in the defendants' possession but could be--or perhaps had been--improperly syphoned away to straws, family members, or employees without receiving fair value before it could be attached and used to satisfy the judgment.

In the present circumstances, it can hardly be "unjust enrichment" for lawyers and accountants hired by companies to be paid for their services.  There was no determination in Zimmermann I that such non-parties were liable.  Such claims might be pursued independently against lawyers or accountants, but not as an enforcement proceeding carried on under the court's reserved jurisdiction.  U.S.I. Props. Corp. v. M.D. Constr. Co., 230 F.3d 489, 497-498 (1st Cir. 2000).

---

[4]Earlier, in a preliminary injunction phase of the case, the court had made clear it had no intention of withholding fees from those providing services to the class action defendants, specifying that "nothing in this Consent Decree shall . . . prohibit an[y] Defendant from paying its attorneys' and accountants' fees within the budget approved by the Court."  Similarly, the definition of "receivership property" in the order appointing the receiver specifically excludes "transfers" made during the litigation "for less than fair consideration."

Neither in their briefs nor when pressed at oral argument in this court did plaintiffs suggest that any of the listed payments allegedly covered by the constructive trust occurred after its establishment or without fair value in exchange. Counsel has cited to us no authority for such an outré reading of the constructive trust language,[5] it would not comport with the usual rationale for constructive trusts, and it was not endorsed by the judge who entered the order.

CROA. The independent claims against the lawyers and accountants based on CROA stand on a different footing. There is no want of federal subject matter jurisdiction because these are federal statutory claims; and such claims might, if the named plaintiffs chose, have been brought by them personally and--if Rule 23 prerequisites were satisfied--as representatives of a class of those similarly injured.

The obstacle is that the named plaintiffs expressly disclaimed any interest in making the CROA claims solely on their own behalf and conspicuously failed to allege or propose to comply with Rule 23 conditions on establishment of a new class action. The reason for this posture is mysterious, but it seems to be part

---

[5]Thomas, Head & Greisen Emps. Trust v. Buster, 95 F.3d 1449, 1454-55 (9th Cir. 1996), cert. denied, 520 U.S. 1116 (1997), involved a claim of fraudulent conveyance; Owner Operator Indep. Drivers Ass'n v. Comerica Inc., 2006 WL 1339427 at *4, *7 (S.D. Ohio May 16, 2006), allowed a class to seek "restitution of money allegedly withdrawn improperly by a third-party from a trust account" already established.

of an effort to elide the distinction between the original Zimmermann I action and the present CROA claims. Whether it reflects concerns about personal jurisdiction, statute of limitations issues or obstacles that might attend class certification is unclear.

Be that as it may, the plaintiffs could not proceed without following Rule 23. The present CROA claims may arise out of the same background as the earlier case against the Puccios and their companies, and a plaintiff class suitable for such claims might be identically defined; but the CROA claims are being brought against new defendants whose liability would have to be separately proved based on facts pertaining to those new defendants. Seeking only recovery on behalf of a class, the plaintiffs would have to allege and establish compliance with Rule 23, which they have declined to do.

The problem is not that the previously certified class evaporated once the original judgment was entered. It retains some legal status as to any recovery secured in that action, see, e.g., Judge Rotenberg Educ. Ctr., Inc. v. Comm'r of the Dep't of Mental Retardation, 677 N.E. 2d 156 (Mass. 1997); and, putting aside issues of the receiver's authority vis à vis that of the class representatives, the class is covered in any enforcement proceeding under the retained jurisdiction of the district court in Zimmermann I.

But a certified class in one action is not a free floating entity entitled to conduct new and separate lawsuits against new defendants[6]--unless and until it is certified in the new action. The Zimmermanns respond that they are not "suing" anew but rather continuing the prior earlier class action to enforce the judgment. E.g., In re Trebol Motors Distrib. Corp., 220 B.R. 500, 501 (B.A.P. 1st Cir. 1998)(pursuit of class claim into bankruptcy court). But new CROA claims against a new set of defendants cannot ride on the coat-tails of the earlier action under the guise of an enforcement proceeding. Cf. Peacock v. Thomas, 516 U.S. 349, 357 (1996); U.S.I. Props. Corp., 230 F.3d at 498.

Affirmed.

---

[6]The Zimmermanns rely on the statement in Sosna v. Iowa, 419 U.S. 393, 399 (1975), that "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant," but it is taken out of context: Sosna involved the import of the mootness of the class representative's own claim during the pendency of the original class action.